UNITED STATES of America,
Plaintiff,

v.

C. O. CHRISTENSEN and J. R. Christensen, individually and as co-partners, dba Christensen Plumbing & Heating, Verda Veronica Christensen, wife of Clarence Oliver Christensen, Mary Ann Christensen, wife of James Robert Christensen, Northern Plumbing & Heating Co., formerly Christensen Plumbing & Heating Co., a Wyoming corporation, and Yellowstone County, Defendants.

UNITED STATES of America,
Plaintiff,

v.

The ROUNDUP MINING COMPANY, a Montana corporation, Viola M. Johnson, a widow, the Unknown Heirs and Devisees of Walter J. Johnson, deceased, Nation Wide Mining Co., a corporation, Marmon-Harrington Company, Inc., a corporation, Clement W. Johnson, Musselshell County, the State of Montana, David W. Williams, Defendants.

Civ. Nos. 320, 417.

United States District Court
D. Montana,
Billings Division.

July 3, 1963.

Moody Brickett, U. S. Atty., and Clifford E. Schleusner, Asst. U. S. Atty. for the District of Montana, for plaintiff.

William J. Speare, County Atty., for defendant Yellowstone County.

Thomas M. Ask, County Atty., for defendant Musselshell County.

JAMESON, District Judge.

■ These actions were instituted to foreclose mortgages held by Small Business Administration. Motions for summary judgment have been filed, by Yellowstone County, Montana, in Cause No. 320, and by Musselshell County, Montana, in Cause No. 417. Both motions raise the same issues with respect to the relative priority of mortgage liens of Small Business Administration (SBA) and liens for taxes, penalties and interest assessed by the respective counties.

The mortgages cover both real and personal property. Plaintiff concedes that the liens for personal property taxes are superior to the mortgage liens, but contends (1) that the mortgage liens are superior to the liens for real property taxes assessed subsequent to the recording of the mortgages; and (2) that even if state and local tax liens are held to be superior to the mortgage liens, this priority does not extend to penalties and interest.

15 U.S.C.A. § 646 provides:

"Any interest held by the Administration in property, as security for a loan, shall be subordinate to any lien on such property for taxes due on the property to a State, or political subdivision thereof, in any case where such lien would, under applicable State law, be superior to such interest if such interest were held

by any party other than the United States."

The parties agree that the obvious purpose of this statute was to place the SBA in the position of a private party with respect to the relative priority of its mortgage liens.[1] By the statute itself state law is made determinative.

The plaintiff contends that a tax lien may not rank ahead of a pre-existing mortgage unless the legislative enactment creating the tax lien has given it priority. In conceding an inferior position with respect to personal property taxes and asserting priority with respect to real property taxes, plaintiff relies upon the differences in language between Section 84-3808, R.C.M.1947, prescribing the tax lien on *personal* property and Section 84-3809, prescribing the tax lien on *real* property. Section 84-3808 reads in pertinent part:

"(a) Every tax due upon personal property is a prior lien upon any or all of such property, which lien shall have precedence over any other lien, claim or demand upon such property, and except as hereinafter provided, every tax upon personal property is also a lien upon the real property of the owner thereof, from and after 12 M. of the first Monday in March in each year."

Section 84-3809 reads:

"Every tax due upon real property is a lien against the property assessed; and every tax due upon improvements upon real estate assessed to others than the owner of the real estate is a lien upon the land and improvements; which several liens attach as of the first Monday of March in each year."

---

1. The purpose of § 646 is further explained in Senate Report No. 1714, 85th Cong., 2d Sess., which reads in pertinent part: "This amendment was proposed by S. 3319 and was endorsed by the Small Business Administration, with the approval of the Bureau of the Budget. *It is designed to place SBA claims against the assets of small-business borrowers in a subordinate position to the* claims *of State and local tax liens against such assets.* This provision is consistent with other provisions of law and clarifies the position of the SBA in actions brought to realize its interest in the assets of borrowers who have defaulted under SBA loans." (Emphasis added.) 1958 U.S. Code.Cong. and Ad. News, Vol. 2, p. 3071 at 3080.

Section 84–3809 does not specifically make the lien for taxes upon real property prior to "any other lien, claim or demand", as does Section 84–3808 with respect to personal property.

This contention of the United States poses an issue of far reaching importance. For many years it has been assumed in Montana that state and local tax liens were superior to the liens of all private mortgagees. Provisions are commonly inserted in mortgages that the mortgagor must diligently pay all state and local taxes, that his failure to do so constitutes a default entitling the mortgagee to foreclose, and that upon such default the mortgagee is empowered to pay the taxes and add any amount so paid to the amount of the original debt secured by the mortgage.[2] As far as can be determined, no mortgagee has heretofore contended that a mortgage is superior to state and local taxes subsequently assessed. At least this contention has not been considered by the Supreme Court of Montana.

It is apparent that the relative priority of taxes upon real property under Montana law cannot be determined solely upon the basis of section 84–3809, supra. Since the Supreme Court of Montana has not passed directly upon the question, its determination requires a study of other Montana taxing statutes and cases which have construed them.[3]

Except in peculiar circumstances not pertinent here,[4] taxes cannot be collected by civil action, but only through voluntary payment or sale of the property at tax sale. State ex rel. Tillman v. District Court, 1936, 101 Mont. 176, 183, 53 P.2d 107, 103 A.L.R. 376. The provisions prescribing the steps to be taken by the county treasurer in the collection of state and county taxes made a lien upon real property are mandatory and exclusive. State ex rel. Spokane & Eastern Trust Co. v. Nicholson, 1925, 74 Mont. 346, 352, 240 P. 837.

Section 84–3807, R.C.M.1947, provides:

> "*Tax operates as a judgment or lien. Every tax has the effect of a judgment against the person*, and every lien created by this title has the force and effect of an execution duly levied against all personal property of the delinquent. *The judgment is not satisfied* nor the lien removed *until the taxes are paid or the property sold for the payment thereof*." (Emphasis added.)

Sections 84–4122 and 84–4124 cover the sale of real estate for taxes due thereon and provide that the property must be struck off to the county if there is no purchaser in good faith. The county's interest may then be assigned by the county treasurer, as provided in section 84–4138, upon the payment of taxes, penalties, costs and interest. See also sections 84–4117—84–4121. When the county has received the amount of taxes and costs, the purchaser receives a certificate of sale (sections 84–4127, 84–4128), and upon the filing of the certificate with the county clerk, the lien of the state vests in the purchaser. *The lien can only be divested by payment* to the purchaser (or to the county treasurer

---

2. The SBA mortgages in question provide that:

> "The Mortgagor will pay before delinquency all taxes, assessments, and other charges levied or assessed against the mortgaged property or any part thereof, * * *
>
> * * * * *
>
> "Should the Mortgagor fail (a) to pay any taxes, assessments, or other governmental charges or levies, as hereinbefore defined; * * * the Mortgagee may, without waiving any right or remedy herein given for any such breach, at its sole option * * * pay any such * * * taxes * * * for the account and benefit of the Mortgagor, and all such expenditures shall be immediately repaid by the Mortgagor, will be secured hereby, and will draw interest at eight per cent (8%) per annum from the date or dates of advancement."

3. The relevant provisions are contained in Chapters 38–41 of Title 84, R.C.M.1947.

4. See Sections 84–4301 and 84–4302, R.C.M.1947.

for the purchaser's use) "of the purchase money and one per cent additional for each month that elapses from the date of the sale until redeemed". Section 84–4130.[5]

Section 84–4132 permits redemption by the owner "or any party having any interest in or lien upon such property", within 36 months from the date of purchase or at any time prior to the giving of notice and the application for a tax deed.

Sections 84–4144 through 84–4150 authorize an action to quiet title and acquire a confirmation deed from the county treasurer whenever the validity of a tax deed appears doubtful. With reference to such action, section 84–4147 provides in part:

"* * * Any defendant having an interest in said land as owner, encumbrancer, or otherwise, may therein question the legality, validity or sufficiency of the assessment or sale of said land and the tax deed formerly issued.

"If upon the trial of said action, the court shall find that the former tax deed is invalid, then *any such defendant may make redemption of the land in which he shall have an interest* by paying the total amount of delinquent taxes * * * together with costs and expenses of the suit; * * * If such payment be made, the county treasurer shall issue a certificate of redemption for said land so redeemed and the action as to said land and said defendant shall be dismissed. *If said payment is not made as provided, then said defendant shall not be heard further in said action.*" (Emphasis added.)

The deed issued as a result of the quiet title proceedings conveys to the grantee "the absolute title to the lands described therein as of the date of the expiration of the period of redemption, *free of all encumbrances and clear of any and all claims of all of said defendants to said action*, and of all persons claiming under them, except the lien for taxes subsequently attached and other liens and assessments now specified and provided by law." (Emphasis added.) Section 84–4150.

It is argued on behalf of the counties that the statutes providing for redemption in mortgagees establish the superiority of the tax liens; that otherwise there would be no need for these redemption provisions. There is some force in this argument, particularly in view of the provision of section 84–4147, supra.

More persuasive in support of defendants' position are the statutes providing that a tax deed conveys absolute title free from all encumbrances and free of any and all claims of defendants to the quiet title actions (section 84–4150, supra, 84–4161, and 84–4170) and the cases construing these sections.

The holder of a tax sale certificate may obtain a tax deed through notice under section 84–4151 or through action under sections 84–4162 et seq.[6] Section 84–4151 requires the purchaser to serve written notice upon mortgagees (among others) at least 60 days previous to expiration of the time for redemption or before application for tax deed. It provides that the owner of the property, "or the mortgagee, or the assignee of the mortgagee" has the right of redemption indefinitely until the notice has been given and the deed applied for.[7]

In construing section 84–4151 in Jensen Livestock Co. v. Custer County, et al., 1942, 113 Mont. 285, 295, 124 P.2d 1013, 140 A.L.R. 658, the court said in part:

"But a tax deed is not derivative, but creates a new title in the nature

---

5. See also State ex rel. City of Billings v. Osten, 1931, 91 Mont. 76, 80, 5 P.2d 562.

6. See State ex rel. Freebourn v. Yellowstone County, 1939, 108 Mont. 21, 27, 88 P.2d 6.

7. Other statutes dealing with redemption include sections 84–4154, 84–4155 and 84–4158.

of an independent grant from the sovereignty, *extinguishing all former titles and liens not expressly exempted from its operation.* (Citing cases.) It is not derived from the fee, but is antagonistic to it and there is no privity between the holder of one and the holder of the other. * * * Logically, therefore, it cannot be good as to some of the former persons interested and void as to others." (Emphasis added.)

Section 84–4161 provides that tax deeds executed more than three years after any tax sale shall be deemed to convey absolute title to the lands to the grantee. Referring to this statute (then § 2215, Rev.Codes 1921) it is stated in State ex rel. City of Great Falls v. Jeffries, 1928, 83 Mont. 111, 121, 270 P. 638, 641: "The provision of section 2215, therefore, is imperative that the tax deed in question extinguishes the lien of special improvement assessments, as it does *all contract liens,* and even prior tax liens." There it was held that a tax deed to the county cut off the lien of the city for unpaid special improvement assessments.[8] The court said further:

"By express statutory enactments both general taxes and assessments for special improvements are made liens upon the property assessed (sections 2154 and 5247, Rev.Codes 1921 [now sections 84–3809 and 11–2229, R.C.M.1947]), but nothing therein contained indicates an intention that either of such liens be paramount to the other.

"However, 'the Legislature has power to provide either that a tax sale shall create a new title, cutting off all prior liens, incumbrances, and interests, or to provide that the tax purchaser shall acquire the interest only of the person in whose name the land was assessed or of the real owner.' 3 Cooley on Taxation (4th Ed.) 2930, § 1492. By the enactment of section 2215, Revised Codes 1921 [now section 84–4161, R.C.M.1947],[9] providing that a tax deed conveys absolute title 'free from all encumbrances, except the lien for taxes which may have attached subsequent to the sale,' our legislature adopted the first course. The tax deed mentioned is not derivative, but creates a new title in the nature of an independent grant from the sovereignty, extinguishing all former titles and liens not expressly exempted from its operation." 83 Mont. at 116, 117, 270 P. at 640.

In State ex rel. Malott, et al. v. Board of Commissioners, et al., 1930, 89 Mont. 37, 296 P. 1, in holding the lien of irrigation district bonds extinguishable by tax deed under what is now section 84–4161. the court said:

"Neither may it be said that, because the Legislature failed expressly to declare that a lien for general taxes is superior and prior to all other liens, such general tax lien is subordinate to the lien for irrigation district assessments. It is aptly said in the case of Minnesota v. Central Trust Co., (C.C.A.) 94 F. 244, 250, that: 'It cannot be inferred that the lien for personal taxes * * * was intended to be subordinate to all prior private liens because the legislature failed to say that it should be deemed paramount. On the contrary, considering the character of the obligation and the dignity usually accorded to such

---

8. The lien for the special improvement district assessments, which were payable in installments, had attached to the property prior to the assessment of taxes, as had the mortgagee liens here involved.

9. Under section 84–4170 (as amended by Sec. 1, Ch. 63, L.1937), there is excepted from the provision that the deed conveys absolute title, the lien of special improvement, irrigation and drainage district assessments payable after the execution of the deed. The 1937 amendment relieves municipalities and irrigation and drainage districts from the harsh results of such cases as State ex rel. City of Great Falls v. Jeffries, supra. The legislature has not seen fit to make similar provisions for mortgagees.

liens, in public estimation, and above all, considering the necessity which exists for giving them priority in order that the public revenues may be promptly and faithfully collected, we conclude that the inference should be that the lien was intended by the legislature to be superior to all liens, prior or subsequent, claimed by individuals, and that nothing should be allowed to overcome this inference but a plain expression of a different purpose found in the statute itself.' " 89 Mont. at 77, 78, 296 P. at 12.

The court went on to quote with approval from Mutual Benefit Life Ins. Co. v. Siefken, 1 Neb. (Unof.) 860, 96 N.W. 603, as follows:

" 'State and municipal governments cannot exist in the absence of revenue for their support. It is the duty of every person residing in a state and receiving the benefits of government to contribute his share towards its support. And every piece of real estate, as well as personal property, in the state, should contribute its share towards the support of the state, county, and municipality where situated. Any one taking a mortgage, or securing a lien of any other character upon property, must take it with the knowledge that such property is bound to pay its proportionate share of the taxes necessary to the maintenance of the government, and must understand that the obligation to contribute to the support of the government is something that attaches to the property itself.' " 89 Mont. at 78, 296 P. at 12.[10]

In Hartman v. City of Bozeman, 1944, 116 Mont. 392, 395, 154 P.2d 279, the court quoted with approval from Robinson v. Hanson, 75 Utah 30, 282 P. 782, 784, as follows:

" 'The necessity and importance of preferring the lien for general taxes over other claims are so impelling that the priority of the sovereign claims of the state will not be depreciated nor denied without warrant from the Legislature in clear and unmistakable terms; * * *.' "

In State ex rel. Federal Land Bank v. Hays, 1929, 86 Mont. 58, 282 P. 32, a mortgagee's right to redeem a portion of lands covered by its mortgage from tax sale was upheld. The mortgage was made, executed and delivered in 1921. The property was sold to Yellowstone County for unpaid state, county, school district and irrigation taxes for the year 1923. Hence the mortgage was first in time, and if the lien thereof had been prior to the lien for taxes, there would have been no necessity of redemption. Under plaintiff's construction of the tax lien statutes the mortgagee could have foreclosed its mortgage and cut off the subsequent tax liens.[11]

By reason of the absence of any decision of the Montana court precisely in point, it seemed advisable to quote at some length from the Montana cases construing tax statutes generally, including excerpts quoted from the decisions of other courts more directly in point. The foregoing pronouncements of the Montana court impel the conclusion that the liens for taxes take precedence over plaintiff's mortgages. To hold the mortgages prior would be inconsistent with the language of the Montana cases, if not in direct conflict therewith.

10. See also Rist v. Toole County, 1945, 117 Mont. 426, 442, 159 P.2d 340, 162 A.L.R. 406, where the court, in holding that the royalty interest in oil and gas need not be assessed separately from the fee, said that the tax deed "strikes down, not only the former owner's fee title, but all encumbrances and incidents thereof, including oil leases and assignments of royalty interests. Like mortgages and

other interests dependent upon the fee, leases and royalty interests must be accepted subject to that legal limitation and to the circumstance that it may become necessary to see that the taxes upon the fee are paid in order to preserve rights dependent thereon."

11. See also Richardson v. Lloyd et al., 1931, 90 Mont. 127, 300 P. 254.

Plaintiff relies primarily upon decisions of the California courts [12] and two decisions of the Court of Appeals for the Ninth Circuit construing California law, i. e., Fresno County v. Commodity Credit Corporation, 9 Cir. 1940, 112 F.2d 639, and Jefferson Standard Life Ins. Co. v. United States, 9 Cir., 1957, 247 F.2d 777.

In Jefferson Standard Life Ins. Co. v. United States the court clearly recognizes that under California law a tax lien is not entitled to priority over a pre-existing mortgage or other contract lien. In distinguishing the California case of Dougherty v. Henarie, 47 Cal. 9, where the court held that a tax deed issued upon a sale for state and county taxes conveyed a superior title free of the liens of a street assessment bond, the court said:

> "The court's decision that the tax deed gave clear title was based upon the explicit language of a California statute which declared that a tax deed 'shall convey to the grantee the absolute title to the lands described * * * free and clear of all incumbrances * * * whatever * * *.' St. 1859, p. 349. It will be noted that the language here quoted referred to the effect of a tax deed. It is true that by way of dictum the opinion of the court referred to 'the necessity of collecting revenue for the support of the Government', and said that this 'imperatively requires that the lien for taxes shall take precedence over all other liens'. But it is well established that California does not go along with any such broad rule, sometimes recognized in other jurisdictions, that a lien for taxes is superior to all other liens, *ex proprio vigore*, even in the absence of a statute so declaring, or because of some principle that tax liens are liens of a 'superior dignity'."

The opinion continues in pertinent part:

> "In Home Owners' Loan Corporation v. Hansen, 38 Cal.App.2d 748, 102 P.2d 417, 419, the court reviewed the California cases, including the Dougherty case, and pointed out that later California decisions disclose that the dictum of the Dougherty case was not California law, saying (38 Cal.App.2d at page 420, 102 P.2d at page 420): 'The decisions in both the Guinn [Guinn v. McReynolds, 177 Cal. 230, 170 P. 421] and Bolton [Bolton v. Terra Bella Irr. Dist., 106 Cal.App. 313, 289 P. 678] cases dispel any doubt as to whether California follows the rule of law that tax liens are ex proprio vigore superior to a pre-existing mortgage or other contract liens. These cases definitely hold that a paramount lien for unpaid taxes depends solely upon legislative enactment. We are of the opinion that these last-mentioned cases correctly state the law and that a specific expression of the legislative intent is necessary for tax liens to take precedence over pre-existing mortgage or other contract liens.' "

■ I cannot reconcile the language in State ex rel. Malott, et al. v. Board of County Commissioners, supra, and Hartman v. City of Bozeman, supra, with the holding of the California courts. The instant cases must be decided by Montana law. While the Montana court has not considered the precise question here presented, the excerpts from the Malott and Hartman cases quoted supra indicate that Montana is one of those states which have recognized that a lien for taxes is superior to other liens, *ex proprio vigore*, even in the absence of a statute expressly so declaring.

Section 84–4103 provides that delinquent taxes shall draw interest at the

12. Guinn v. McReynolds, 1918, 177 Cal. 230, 170 P. 421; Home Owners' Loan Corporation v. Hansen, 1940, 38 Cal.App. 2d 748, 102 P.2d 417; Smith v. Addiego, 1942, 54 Cal.App.2d 230, 129 P. 2d 953.

rate of two-thirds of one per centum per month from the date of delinquency until paid and two per centum shall be added to that amount as a penalty. The question arises whether interest and penalties constitute part of the tax so as to share the priority of tax liens and come within the purview of 15 U.S.C.A. § 646, supra, wherein the interest of the Small Business Administration is subordinated to liens for taxes when superior under state law.

■■ While the lien for taxes extends to penalties and interest (Sections 84–4124, 84–4130 and 84–4138, R.C.M. 1947) these charges are not a part of the tax. The Supreme Court of Montana expressly so held in State ex rel. Sparling v. Hitsman, 1935, 99 Mont. 521, 44 P.2d 747.[13] That case upheld the validity of legislation permitting redemption of property from tax sale by payment of the taxes without adding penalties and interest. Since it was recognized that the tax was a liability which could not be remitted, reduced or postponed by reason of Article V, section 39 of the Constitution of Montana, it was necessary for the court, in upholding the legislation, to hold that interest and penalties were not part of the tax itself. In so doing the court deemed interest upon a tax obligation a "penalty", which has for its function inducement of property owners to promptly pay their taxes.

■ The Small Business Administration is an agency of the United States. 15 U.S.C.A. § 633. Section 646 of that title, supra, does not subordinate security interests of the SBA to penalties imposed by the states to enforce the collection of their taxes. Where the United States undertakes an obligation, penalties for failure to perform such obligation may not be imposed upon it in the absence of express congressional authority. See Missouri Pacific Railroad Company

v. Ault, 1921, 256 U.S. 554, 41 S.Ct. 593, 65 L.Ed. 1087; Reconstruction Finance Corporation v. State of Texas, supra. And normally penalties and interest are not proper charges against governmental agencies. See Cascade County, Montana v. Penwell, D.Mont.1946, 67 F.Supp. 253, 256.

Here of course no attempt has been made to assess a penalty or interest directly against the plaintiff. It is clear, however, that as to liens not subordinated under 15 U.S.C.A. § 646, supra, the relative priority of plaintiff's lien is affected by plaintiff's status as an agency of the United States.

■ As in the case of federal tax liens,[14] the priority of mortgage liens, held by an agency of the United States, and state tax liens is governed by the principle that first in time is first in right. United States v. Ringwood Iron Mines, Inc., 3 Cir. 1958, 251 F.2d 145, cert. den. 356 U.S. 974, 78 S.Ct. 1138, 2 L.Ed.2d 1148; United States v. Roessling, 5 Cir. 1960, 280 F.2d 933, 936; United States v. County of Iowa, 7 Cir. 1961, 295 F.2d 257, 259. See also Southwest Engine Company v. United States, 10 Cir. 1960, 275 F.2d 106, 107. As noted, this principle has been abrogated in the instant cases to the extent of the taxes themselves by 15 U.S.C.A. § 646. But with respect to the penalties and interest added to defendants' taxes it must control; and the liens for penalty and interest could not attach prior to the dates of delinquency. See Section 4103, R.C.M.1947, supra.

I conclude accordingly: (1) that the liens for state and local taxes assessed against both real and personal property are superior to plaintiff's mortgage; but (2) that this priority does not extend to penalties and interest.

Pursuant to Rule 11(b) of the Local Rules of Court, counsel for Yellowstone

13. What constitutes "taxes" due on the property is governed by the substantive law of Montana. See Reconstruction Finance Corporation v. State of Texas, 5 Cir. 1956, 229 F.2d 9, 11, cert. den. 351 U.S. 907, 76 S.Ct. 695, 100 L.Ed. 1442.

14. The leading federal tax lien case is United States v. City of New Britain, 1954, 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520. Compare also Streeter Bros. v. Overfelt, D.Mont.1962, 202 F.Supp. 143, and cases there cited.

**730**

County, Montana, in Cause No. 320, and counsel for Musselshell County, Montana, in Cause No. 417, will prepare, serve and lodge proposed judgments in accordance with this opinion.